Thank you, Your Honor. May it please the Court, I'm Daniel Schlesinger. I represent the plaintiff appellant in this matter, Torgerson Properties, Inc., also known as TPI. TPI is an employee-owned business that develops and operates hotels mostly around the state of Minnesota, although with a minor presence in Florida as well, and also operates associated businesses with those hotels, convention centers, restaurants, fitness centers. In this case, the district court dismissed our complaint, our amended complaint, relying heavily on a case that had been pending before the chief judge, is still pending before the chief judge of the District of Minnesota, the Seifert v. IMT insurance case. The chief judge dismissed the complaint. When the amended complaint was filed, the chief judge went through a much more thorough analysis of what Minnesota law provides and determined that the complaint in that case did state a claim and has allowed that case to proceed, essentially taking away the basis that the district court in our case relied on for dismissal of our complaint. And, of course, the district court dismissed our complaint without leave to amend, which is what brought us here. When the chief judge in the Seifert case reassessed what Minnesota law provided Counsel, just a quick question. Did you file a motion for leave to amend in this case? We did not. We had a footnote in our brief where we asked for leave to amend, but we didn't file an actual motion. What the chief judge found in the Seifert case is that Minnesota law should allow for recovery for business interruption losses under policies identical to ours, where COVID has caused business interruption, COVID and or orders pursuant to COVID. Have other district courts around the country found similarly? It seems the tally right now in terms of the courts that have ruled on similar types of insurance policies have heavily been in favor of not providing coverage. I think, Your Honor, the tally certainly in the Federal courts has largely been in favor of denying, in favor of the insurance companies in denying these claims. However, there's a lot of variation in the language of these policies. I think we do better under policies that have language that's identical to ours. Some of those policies have virus exclusions, which our policy does not have. And I think Judge Stenheim's opinion in the Seifert case, his analysis of where Minnesota would come out on this. Now, Minnesota... As you say, Minnesota law would be the same in these two cases, but are the policies the same? The policies are, in the operative language, they're the same. One big difference is that in the Seifert case there was actually, there is a virus exclusion, which we don't have in our policy. So if anything, our case is a little stronger than the Seifert case. What Judge Seifert found in his interpreting direct physical loss to property, Minnesota courts have concluded that direct physical loss can exist without structural damage or tangible injury to property. It is sufficient to show that the insured property is injured in some way, citing the General Mills case and the Sentinel case. As such, a qualifying loss may arise from an impairment of function and value to property as when legal regulations stymie a business' ability to lawfully provide its products, citing the Marshall Produce case, Minnesota 1959 Supreme Court case. Additionally, a qualifying loss may arise if a building's function is seriously impaired and the property is rendered useless. So the problem I have with that interpretation is it seems to write out the word physical. Well... How can you keep physical operative and still reach that conclusion? Well, I believe there's two ways, Your Honor. And Judge Stonheim did deal with that in his opinion denying this motion, where he said, well, I'll find it later, but he did deal with that. But the two ways are, one, it is physical. You know, physical is not a term that's defined in the policy, so we have to give it the ordinary meaning and look to dictionary definitions to determine what it means. And physical is a pretty general term. But physical can be simply that you can't be there, that there's no, you can't have a, as opposed to mental, physical, you can't have a presence there. What do you make of our Court's oral surgeons case that basically says physical means tangible? It doesn't say tangible, but it actually talks about something affecting the structures. A couple of points there, Your Honor. Obviously, the oral surgeons case is very instructive on a lot of issues decided by this Court earlier this year under Iowa law, affirming a dismissal of a complaint, a similar complaint, but with very simple distinction. Direct physical loss had to be direct physical loss to the property rather than direct physical loss of the property, a distinction that, again, the Seifert case makes strongly, as do other cases, including, I know defendants provide, the defendant provided this Court with a recent Seventh of, which is what our policy provides, and loss to, which is what the standing point dental, or not the standing point dental case, but the oral surgeons case from the Eighth Circuit just was dealing with earlier this year. The differences between oral surgeons in our case are, one, it was decided under Iowa law, so different law. Well, why specifically does that matter? I think the oral surgeons relies in large part on Minnesota cases, doesn't it, because of the similarity between Iowa and Minnesota law? I think, Your Honor, that there is similarity between the law, but Iowa does not benefit from the cases that Judge Fenheim referred to in his opinion, the General Mills case, the Sentinel case, which are Minnesota appellate court cases. There is no actual Minnesota Supreme Court case on point, but as Judge Fenheim recognized, looking to Minnesota appellate courts who have a lot of experience applying Minnesota law, in the absence of any reason to believe that they have not accurately predicted where the Minnesota Supreme Court would come out, is the appropriate way to go. So there is a difference between Minnesota law and Iowa law. Iowa has a string of cases that go the other way on this question of what constitutes direct physical loss, and these two cases cited in the Seifert case, both the General Mills and the Minnesota Supreme Court, there can be coverage in COVID cases for the direct physical loss caused by, I'm sorry, not in COVID cases, but there can be coverage when there's, there doesn't have to be actual structural damage, tangible injury to property, that something like presence of asbestos fibers or even presence of direct physical loss that can invoke this coverage. Even if tangible injury to property were required, which I think Minnesota law says it's not, but if tangible injury to property is required, and that may well be the lesson from the oral surgeon's case from this court, we think that we have tangible injury to property. We didn't, we filed our amended complaint in this case back in the summer of 2020, when much less was known about COVID and about the law and how that was going to develop. But we did, we didn't actually allege that COVID contamination had happened on our property. But we did allege, or we didn't, what we, we alleged that our property was not usable for the most part. The hotel rooms were deemed to be essential businesses, and those were usable. But the convention center and the fitness center, those kinds of properties were not usable. Those were shut down. And we attached to our complaint, to our amended complaint, exhibits, correspondence with the insurance company, where we informed the insurance company that there was actually a presence of people who had been infected with COVID on the property. Now, defendant claims that that's not an allegation of actual contamination with COVID, and that may technically be correct. But we think that reading that somebody with COVID is enough to contaminate the property. If that's not a sufficient allegation, we requested of the district judge, not by motion, but by footnote. But it's common, as this Court knows, when courts, when district courts are granting Rule 12b6 motions, they evaluate whether to grant leave to amend or not. And if leave to amend is not going to be futile, typically that is granted. So we would have thought that the district court would have allowed us at least one more bite to try to amend our complaint to specifically allege what we think was implied, at least in the complaint, which is that there was COVID present on the property. Now, just a couple of additional points. So at what point did you ask the court for leave? In the briefing on the motion to Rule 12b6 motion and our response to that motion. The defendant has claimed that getting rid of COVID, you know, causing injury to property, because all you have to do is wipe it away. And that just doesn't seem to be borne out. You can keep wiping it away, but it keeps coming back, as this Court is well aware. If it were as simple as using disinfectant and wiping it away, we wouldn't be confronting yet another wave of COVID, which continues to plague our nation and client, and businesses like my client. And I would note that that's still an open question, what the impact of COVID is. In a recent trial in the district court for the Western District of Missouri, an MIT chemist opined that COVID doesn't just wipe away, that it actually structurally enters the surface and that it permanently alters the surface. Now, that trial, I will admit, resulted in a verdict in favor of the defendant insurance company. But we don't know on what basis. And all that we're asking is that we be permitted the opportunity to, as the plaintiff did, plaintiff policyholder did in that case, to present our case that COVID does have this impact. Within your rebuttal time, you can continue if you like, or you can reserve. Okay. Thank you very much. Mr. Shanmugam? Thank you, Chief Judge Smith. Canon Shanmugam of Paul Weiss for Appley Continental Casualty, an affiliate of CNA. May it please the Court, this case presents the question of whether claims seeking to recover business losses from the public health orders issued in the wake of COVID-19 fall within the scope of coverage of provisions commonly found in property insurance policies. As this Court recently held in oral surgeons, and as the overwhelming majority of courts nationwide have also held, the answer to that question is no. Under Minnesota law, the mere loss of use of property does not constitute a physical loss of or damage to that property. Now, I'd like to start this morning with this Court's decision in oral surgeons, which, in our view, effectively controls the outcome here. As this Court is aware from the earlier colloquy with my friend, Mr. Schlesinger, in oral surgeons, this Court construed a policy under Iowa law, but in doing so, as Judge Kobus pointed out, the Court looked to this Court's earlier decisions applying Minnesota law to policies that cover direct physical loss or damage. In light of this Court's reasoning in oral surgeons, appellant does not argue that Minnesota law differs in any way from Iowa law. Quite to the contrary, appellant recognizes at page 23 of its brief that the law of most states operates in the same way when it comes to the interpretation of policy language. Instead, Torgerson's argument really rests entirely on a purported distinction between the phrases loss of and loss to. Now, we would submit that the fundamental problem with that argument is the one that Judge Grunder alluded to in his question, which is that the loss, regardless of the preposition that follows, still has to be of physical loss. And it's perhaps not surprising that this Court itself in this series of decisions has construed policies that refer to direct physical loss of the property and direct physical loss to the property effectively, identically, at least for purposes of this question. Now, it may be that in the abstract you can posit some hypothetical situation where loss to might be narrower than loss of, and indeed this Court in its opinion in the source food case suggested as much. But for purposes of the question that is presented here, the key and dispositive fact is that the loss still has to be a physical loss. And whether the policy refers to a loss of property, as in the Pantera case, or a loss to property, as in the source food or oral surgeons case, the answer is the same, as this Court said in oral surgeons, for physical loss or damage to exist. There must be some physicality to the loss or damage of property, e.g., a physical alteration, physical contamination, or physical destruction. Counsel, what's your reply to the appellant's reliance on the logic in Seifert? So we respectfully think that Seifert was incorrectly decided really for the reason, Chief Judge Smith, that I just stated, namely that we believe that Chief Judge Thunheim in his opinion failed to attach sufficient weight to the fact that the loss still has to be a physical loss. And indeed, if you look at the decisions of other circuits, many of the decisions of the other circuits to which we point, and since the beginning of briefing in this case, there have now been five courts of appeals that have reached the same conclusion on this issue, many of those cases themselves involve policies that use the loss of phrase. And I want to go directly to the case that my friend, Mr. Schlesinger, referred to, the Sandy Point decision, the most recent decision from the Seventh Circuit. In that case, to be sure, the policy that was at issue in the Sandy Point case was a policy that referred to loss to property. But on the very same day, the very same panel issued a companion decision in the Bradley Hotel case that involved a policy that referred to loss of property. And if you look at the reasoning in the Sandy Point decision, which was really the lead of the four cases that the Seventh Circuit decided on that day, the reasoning focuses heavily on the role of the word physical. And Judge Wood, in her opinion for the Court, essentially says, look, regardless of the relationship between loss and damage, the key point is that the loss still has to be a physical loss, and that contemplates some alteration. So why isn't, if you're denied physical access to the property, why isn't that a direct physical loss of the property? I think that if you had a case where there was a denial of physical access to the property, perhaps the analysis would be somewhat different. If there were a total denial of physical access, let's say that you have a hypothetical situation where, say, you know, you have a hotel and all of the roads around the hotel, you know, just sort of disappear and the hotel is suddenly an island. I think I would submit that even in that circumstance Or a government order that says you cannot get on this property. Well, the government orders in the wake of COVID-19 obviously don't go that far. And that's a critical factual distinction. I think I would say in that hypothetical that the outcome is still the same because there's been no alteration to the property itself. But I suppose you could make an argument in my hypothetical that if, you know, the roads have fallen away around the building, maybe that comes closer to an actual physical alteration. But that's really what's required. And the reason why I think that makes sense, Judge Grunder, is, you know, these are property insurance policies. And so, you know, I think that one common strain in the cases outside the COVID-19 context is that you have to have some alteration to the policy, to the property. And the best... Well, they're property insurance, but it's also business interruption insurance in the property policy, right? Correct. And that defines the losses that you can recover for once you have the trigger of some alteration to the property. And I think this is where the language in the policy about repairing, rebuilding, or replacing really comes into play. And it really is why, when you have a substance that can... Let me come at it from a little bit different angle. We're supposed to interpret policy language so as to give meaning to every provision. Given the way you're asking us to do it, are we really giving meaning... Let me ask it this way. Isn't direct physical loss essentially the same as damage too? And therefore, we're not giving any different meaning between the two? I don't think so, Judge Grunder. And I think I would recognize that there will be circumstances in which there's overlap between those two terms. And, of course, that's not uncommon in policies, in insurance policies. But I think it's possible to posit a situation in which you have loss, but not damage. I think the paradigmatic example of that is when you have theft of personal property. I think you would say that's a loss. But no, not just loss, direct physical loss. Can we have direct physical loss without damage? Yeah, I think theft would qualify as that. In other words, I think where you have complete dispossession of property, that that would qualify as loss. The whole key here is that it's not complete loss of access. Is that right? No. I think that the key here is that there is not physical loss, which is to say that, you know, I think that one would ordinarily think of loss as, you know, complete loss. And so if you're thinking about real property, I would say that loss is a situation in which the property burns completely to the ground. Damage is a circumstance in which, you know, there's a fire and, you know, some of the wood in the property needs to be replaced, but it's something short of a complete loss. And I think that the reason that Appellant is relying so heavily on loss here as opposed to damage is because, first, I think in the context of damage, it's even clearer that even if you didn't have the word physical, you'd be contemplating some sort of physical alteration. And second, because the argument here really rests entirely on this preposition of rather than to by virtue of this Court's decision in the oral surgeon's case. And so, you know, again, I think that's really the only way to treat this case differently and to go back to the sort of state of the law. You know, at least three of the five circuits on which we rely have construed policies that use the phrase loss of the same way and have done so with materially identical reasoning to this Court's reasoning in the oral surgeon's case. In my remaining time, there are just a couple of other points I wanted to touch on very briefly. You know, the first is that, as Chief Judge Smith pointed out, you know, when you look at the case law on this question nationwide, it overwhelmingly is in favor of the position that we're articulating here. That is true with regard to the cases arising in the lower courts under Minnesota law as well and to the extent that Appellant relies on the Seifert case, one thing I would just note for the record is that after Chief Judge Thunheim's most recent opinion, that case was voluntarily dismissed by the plaintiffs. So that case will not be heading up to this Court. I do want to spend just a couple of minutes addressing, you know, what I think is really the other argument beyond the argument concerning the difference between loss of and loss to. The other argument that Appellant makes is the discrete argument concerning the presence of COVID-19 and whether an allegation of the presence of COVID-19 is sufficient. Now, first of all, we think that the complaint here, even taking into account the incorporated documents, did not sufficiently allege the presence of COVID-19 and that Judge Magnuson's reasoning on that was correct, and I would point the Court to pages 816 to 817 of the appendix, where Judge Magnuson explains why that is true. And again, we think that even if you take into account the incorporated claims documents, that those documents at most indicate that Torgerson believed that one person and one visitor had contracted COVID-19, and that is obviously, that would obviously require a substantial inference to an inference that COVID-19 itself was actually physically present. And as I think was clear from the colloquy between Judge Kobus and Mr. Schlesinger, there was no motion for leave to amend the complaint in this case. At most, there was a suggestion in the briefing on the motion to dismiss that if the Court thought that the allegations were contrary to the Federal Expressions case from the Sixth Circuit, which we cite in the second of our three Rule 28J letters, and that decision makes clear that it's not enough just to make a conclusory allegation that COVID-19 is present. A party would also have to allege how the presence of COVID-19 materially altered the property. And so I would just note that, you know, this is not something that could just be fixed by a simple amendment to the pleading. But more generally, I do want to make the broader argument that in our view, merely alleging the presence of COVID-19 would not be sufficient. And I think that that's really true for the reason that I mentioned a minute ago in response to Judge Grunder, and that is that, you know, when you have a substance that does not do damage to the actual property, where a period of time is not required to rebuild, repair, or replace the property, that there cannot... In certain circumstances where actions have been taken, such as installing plexiglass or making physical alterations to the property to make conditions safer for occupants, would those types of steps qualify as colloquially think of those steps as repairing or rebuilding or replacing in the same way as, say, Chief Judge Smith, if you had asbestos in the property. You know, when you have asbestos in the property, you actually have to rip out the insulation or the asbestos-containing materials and to install new materials. Regardless of whether or not COVID-19 is something that can be, you know, cleaned up purely through disinfection or whether it's something that simply is airborne and dissipates with time, you know, that is not the sort of thing that one would ordinarily think of as repairing or replacing. And in some sense, this is just the flip side of the argument about what constitutes a physical loss. In our view, the physical loss has to require some sort of reimbursement, and conversely, the rebuilding has to be to restore the property. Let's put a finer point on what we were talking about before. I thought you conceded to me before that if it was a complete denial of access to the property, that that might be a physical loss of the property. Yeah. And I think the reason why I equivocated a little bit about that, Judge Grunder, was because the property in that hypothetical, you know, one could make the argument, and I suppose if we were having a dispute about this sort of case, that my client would make the argument that the property in that hypothetical is intact. So, you know, in other words, in the hypothetical where, you know, the roads literally disappear because of a mudslide or something like that, the property itself doesn't need to be rebuilt. And so, you know, I think there's a lot of controversy about whether or not there would be coverage in that circumstance. I think here, by contrast, again, whether... Correct me if I'm wrong, but I think what you're arguing here is that there's not a complete lack of access to the property. They can go on the property. It's just that they can't use it for certain things that they might have otherwise been able to use it for. I think that is a helpful way of thinking about this, Judge Grunder, and I would refer the Court to Chief Judge Sutton's opinion for the Sixth Circuit in the Santos case, which really talks about this. And in a context that's very similar to the context here, and if I could just finish my sentence on this point, you know, when you're talking about the sorts of restrictions here on hotels and restaurants, you know, these are not even complete closures of the business, much less denials of physical access. At most, things like temporary zoning restriction. It's as if you can say, you can continue to use your property. You just can't use it for dining in or you can't have, you know, new hotel guests and the like. And I think if you think about it that way, it really does feel like a far cry from a total denial of access. And so we would ask that the judgment of the district court in this case be affirmed. Thank you. Thank you, counsel. Mr. Schlesinger. Thank you. A couple points I'd like to address. The weight of authority question, the point that I should have made before is that the federal court cases are generally reported and get a lot of publicity. State court decisions typically don't. State court decisions, in our experience, are going, there are decisions in favor of policyholders in those cases. They tend not to get reported. So the balance, yes, I would concede that more cases are being decided in favor of insurers than in favor of insureds, but the balance is not quite as drastic as the defendant would portray. In addition, I'd like to talk about both the Eighth Circuit decision and the Seventh Circuit decision. Neither one of those decisions said that policyholders cannot recover for business interruption caused by pandemic-induced losses. In fact, this Court's decision in oral surgeons, Judge Boo in the Western District of Missouri, subsequent to that decision, interpreted that as meaning that as long as the plaintiff could put on proof, could plead and prove that there was contamination of the property, that the case should proceed. And similarly, in the Sandy Point Dental case, Judge Wood in the Seventh Circuit noted the similarity between gas contamination cases and COVID contamination cases and noted that gas contamination cases are eligible for coverage under these policies. She said the gas infiltration in these cases led to more than a diminished ability to use the property. It was so severe that it led to complete dispossession. And in those circumstances, it might be appropriate for a policyholder to recover. And that's what we have here. Yes, we were allowed to use hotel rooms, but we were not allowed to use our fitness facilities, our convention facilities, which are significant sources of revenue that my client relied on to do business. And one — I'm sorry, my time is up. So if there are no questions, I guess I will sit down. Thank you, Mr. Chief Justice. Thanks very much. The Court thanks both counsel for your presence before us this morning and the arguments you've provided to us in supplementation to the briefing. We'll take the case under advisement to render decision in due course. Thank you. Madam Clerk, would you call the fifth and final argument for the morning? Wilbert Glover v. Matt Bostrom et al. Ms. McAlmitt, when you're prepared, please proceed.